UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBIN N. COOLEY                                    CIVIL ACTION

VERSUS                                             NO:  12-2376

HOUSING AUTHORITY OF THE                           SECTION: "S" (4)
CITY OF SLIDELL

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Robin N. Cooley's Motion fo Summary Judgment (Doc.
#17) is **GRANTED.**

**IT IS FURTHER ORDERED**  that the Housing Authority of the City of Slidell's Motion
for Summary Judgment (Doc. #16) is **DENIED.**

## BACKGROUND

This matter is before the court on cross-motions for summary judgment.  Plaintiff, Robin N.
Cooley, argues that there is no disputed issue of material fact that she was denied due process when
defendant, the Housing Authority of the City of Slidell ("SHA"), terminated her housing assistance,
and SHA's termination of her housing assistance was arbitrary and capricious.  Conversely, SHA
argues that there is no disputed issue of material fact that it complied with due process requirements
prior to terminating Cooley's housing assistance, and that it did not act arbitrarily and capriciously
in terminating Cooley's housing assistance.

The United States Department of Housing and Urban Development funds and administers
the Section 8 Housing Choice Voucher Program, which "pays rental subsidies so eligible families
can afford decent, safe and sanitary housing."  24 C.F.R. § 982.1(a)(1). The Voucher Program is
managed "by State or local governmental entities called by public housing agencies (PHAs),"
including SHA.  Id.; see also Louisiana Revised Statutes § 40:382(16) (Local housing authorities

are political subdivisions of the State of Louisiana). Under the Voucher Program, families select and rent reasonably priced units that meet certain housing quality standards, and the PHA contracts with the owner to make rent subsidy payments on the family's behalf. 24 C.F.R. § 982.1(a)(2).  The amount of "the subsidy is based on a local 'payment standard' that reflects the cost to lease a unit in the local housing market," and "[i]f the rent is less than the payment standard, the family generally pays 30 percent of adjusted monthly income for rent." Id. at § 982.1(a)(4)(ii). To participate in the Voucher Program, the family must comply with HUD's Family Obligations, which include supplying information about household income and family composition in the unit to the PHA, and participating in annual eligibility recertification interviews with the PHA. Id. at § 982.551.

Cooley has participated in the Voucher Program since 1997.  In August 2009, Cooley transferred from the Voucher Program in Jefferson Parish, Louisiana, to the one in Slidell, Louisiana, which is managed by SHA.  Prior to beginning her participation in SHA's Voucher Program, Cooley signed a "Statement of Family Obligations" acknowledging that she understood the program's requirements, which included complying with interim and annual reporting requirements, reporting any changes in her source of income within ten days of the change and reporting any changes in household composition within ten days of the change.  Cooley reported to SHA that her annual income was $10,200, based upon child support payments and social security benefits.  Cooley did not report the fact that she had worked at Dillard's department store since October 20, 2007, and that she was on a leave of absence when she applied for SHA's Voucher Program.  Cooley returned to her position at Dillard's on August 31, 2009, ten days after she was

accepted into SHA's Voucher Program.  Cooley did not report her increased income to SHA until her annual recertification hearing on May 11, 2010.

On January 8, 2010, Dillard's terminated Cooley's employment.  Cooley reported her termination to SHA on January 10, 2011.  In May 2011, during her annual recertification hearing, Cooley informed SHA that she was receiving $128 per week in unemployment benefits, when she was actually receiving $142 per week in unemployment benefits.  In September 2011, SHA assumed that Cooley was no longer receiving unemployment benefits, although her benefits continued until March 2012. Cooley did not correct SHA's error.

In March 2012, Cooley's mother, who was receiving hospice care, moved into Cooley's apartment.  It was unclear how long Cooley's mother would reside with Cooley, and Cooley did not seek prior approval for the change in family composition, or report the change to SHA.  Cooley's mother died on March 29, 2012, ten days after she moved into Cooley's apartment.[1]

After her mother's death, Cooley and her children temporarily stayed at her mother's former apartment in eastern New Orleans, Louisiana to conclude her mother's affairs.  During this time, Cooley's children attended school near Cooley's apartment in Slidell, Louisiana.  Slidell is approximately 30 miles away from eastern New Orleans.  Cooley did not retrieve her mail until she returned home on April 18, 2012.

When Cooley returned home, she discovered that she had a certified letter from SHA at the post office.  The post office had attempted to deliver of the letter on April 12, 2012, and again on April 16, 2012.  Cooley retrieved the from the post office letter on April 19, 2012.

---

[1] SHA's administrative plan provides that an adult who stays in an apartment less than thirty consecutive days qualifies as a guest, rather than a change in family composition.

3

The letter, dated April 9, 2012, informed Cooley that her SHA annual recertification hearing was scheduled for April 17, 2012, at 10:00 a.m.  The letter stated that the appointment could be rescheduled within three days from the date of delivery of the letter, that "[f]ailure to show for [the] scheduled appointment or notification to change [the] scheduled appointment will be grounds for immediate termination of [the] lease," and that the letter would be the only notification of the appointment.

Cooley went to SHA's office on April 19, 2012, but her caseworker could not meet with her until the next day.  Cooley returned to SHA's office on April 20, 2012, and explained to her caseworker that she missed the April 17, 2012, recertification hearing because she did not receive the notification letter prior to that date.

On April 24, 2012, Cooley was notified that her participation in the Voucher Program would be terminated effective May 31, 2012, for her failure to attend her scheduled recertification hearing and for other unspecified program violations.  The termination notice informed Cooley that she had the right to appeal the decision by requesting an informal hearing, in writing, within ten days of the date of the letter.  Cooley timely requested the informal appeal hearing.

Cooley's appeal hearing was conducted on May 15, 2012, by Sheila Danzey, SHA's Interim Executive Director.  Thereafter, on May 24, 2012, Danzey issued a decision letter to Cooley informing her that the termination of her participation in the Voucher Program was being upheld

because Cooley violated Family Responsibilities 4, 5, and 6.[2] The decision letter discussed the facts

surrounding Cooley's failure to attend her recertification hearing, and stated:

> It was your responsibility to keep your scheduled appointment in order to continue your assistance or contact this office to reschedule. You have not demonstrated that you did not attend your appointment due to circumstances that were beyond your control. Your recertification appointment was scheduled three weeks after your mother passed which was ample time for you [to] receive your mail and/or to contact this office to discuss the possibility of rescheduling your appointment. Your decision not to pick up your mail immediately upon receiving notice from the post office that you had certified mail from the Housing Authority was your own personal decision.  The post office made two attempts (12[th] and 16[th]) to deliver[] your appointment [notification] to your door via certified mail.

On September 26, 2012, Cooley filed this action in the United States District Court for the

Eastern District of Louisiana. Cooley brings claims against SHA under 42 U.S.C. § 1983, alleging

---

[2] Family Obligations 4, 5, and 6, require the family to:

4. Comply with all interim and annual reporting requirements.

5. To report, in writing, <u>ANY</u> change in source of income with ten (10) days of the date of change.

6. To report, in writing, <u>ANY</u> changes in household composition within ten (10) days of the change.

Under the applicable federal regulation, "[t]he person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision." 24 C.F.R. § 982.55(e)(6).  HUD has commented that:

> The statement of decision required by the regulation must be truly informative as to the reasons for the decision.  This would include a short statement of the elements of fact or law on which the decision is based.  A bare and conclusory statement of the hearing decision, will not satisfy the regulatory requirement.

The decision letter did not discuss facts related to Cooley's failure to comply with Family Obligations 5 or 6.  Rather, the letter has a conclusory statement that Cooley violated those Family Obligations.  Therefore, SHA may not rely on Cooley's failure to comply with Family Obligations 5 or 6 as the basis for terminating Cooley's participation in the Voucher Program.

5

that SHA's decision to terminate her participation in the Voucher Program due to her failure to attend her recertification hearing violated her right to due process because the notice of the recertification hearing was inadequate.  Cooley also alleges that SHA's termination of her participation in the Voucher Program was arbitrary and capricious because it did not account for all of the circumstances.[3]  Cooley and SHA filed cross-motions for summary judgment.

## ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

---

[3] In her complaint, Cooley alleged that she did not receive a hearing by an impartial decision maker. She has abandoned those claims because discovery has not yielded any evidence to support them.

6

**B.     Cooley's Due Process Claim Under § 1983**

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. §1983; Monell v. N.Y.C. Dept. of Soc. Serv., 98 S.Ct. 2018 (1978).  Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. Olabisiomotosho v. City of Hous., 185 F.3d 521, 525 n. 3 (5th Cir. 1999).

To pursue a claim under section 1983, plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and; (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. Sw. Bell Tel., LP v. City of Hous., 529 F.3d 257, 260 (5th Cir. 2008); see also West v. Atkins, 108 S.Ct. 2250, 2255-54 (1988).  Cooley has alleged a claim under § 1983.  Cooley alleges that SHA, a political subdivision of the State of Louisiana, acting under the color of state law, deprived her of her right to due process secured by the Fourteenth Amendment to the Constitution of the United States when it terminated her participation in the Voucher Program. See James v. Dall. Hous. Auth., 2013 WL 2097571, at * 4 (5th Cir. 5/15/2013) (A housing authority, "as a municipality, is a 'person' subject to suit under § 1983").

Because a housing authority is a local governmental body, it is liable for damages under §1983 for constitutional violations that result from its official policies.  See Monell, 98 S.Ct. at 2035-36; see also James, 2013 WL 2097471, at *4.  A municipality or government body cannot be held vicariously liable under § 1983 for the constitutional torts of its employees or agents.  Monell, 98 S.Ct. at 2037.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the injury that the government as an entity is responsible under § 1983." Id. at 2037-38.  To establish liability for a constitutional violation against a governmental body, the plaintiff must prove three elements: (1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.  Id. at 2037.

### 1.  Policy Maker and Official Policy

The "official policy" prong requires that the deprivation of constitutional rights be inflicted pursuant to an official custom or policy.  "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." Piotrowski v. City of Hous., 237 F.3d 567, 579 (5th Cir. 2001).  The policy maker for a housing authority in Louisiana is the housing authority's Board of Commissioners. LA. REV. STAT. § 40:401 ("The powers of each local housing authority shall be vested in its commissioners").

Cooley alleges that SHA's policy of sending a Voucher Program participant one notice of her annual recertification hearing, and then terminating her participation in the Voucher Program if she fails to attend the meeting or reschedule it prior to the scheduled time, deprived her of her constitutional right to due process.  SHA's Board of Commissioner's promulgated this policy.  Thus, Cooley has satisfied the "policy maker" and "official policy" prongs.

### 2.  Moving Force

To satisfy the "moving force" prong, the plaintiff must show culpability and causation.  A municipality is culpable under § 1983 if: (1) the official policy is unconstitutional; or (2) if the official policy was "promulgated with deliberate indifference to the 'known or obvious

consequences' that constitutional violations would result."[4]  Piotrowski, 237 F.3d at 579 (quoting

Bd. of Comm'rs of Bryan Cnty., Okla. v. Brown, 117 S.Ct. 1382, 1389-90 (1997)).  Cooley alleges

that SHA policy of sending one notice of the recertification hearing and terminating participation

in the Voucher Program if the participant fails to attend the meeting or reschedule it prior to the

meeting time, was the moving force behind the deprivation of her constitutional right to due process.


The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive

any person of life, liberty, or property, without due process of law." U.S. CONST., AMEND., XIV, §

1. Recipients of government public assistance, such as the Voucher Program, have a property

interest in continuing to receive such assistance, and must be afforded notice and an opportunity to

be heard before their benefits can terminated. See Goldberg v. Kelley, 90 S.Ct. 1011 (1970).  A

housing authority's termination procedure must provide: "(1) timely notice from the housing

authority stating the basis for the proposed termination, (2) an opportunity by the tenant to confront

and cross-examine each witness relied on by the housing authority, (3) the right of the tenant to be

represented by counsel, (4) a decision, based solely on evidence adduced at the hearing, in which

the reasons for the decision are set forth, and (5) an impartial decision maker."[5] Clark v. Alexander,

85 F.3d 146, 150 (4th Cir. 1996) (citing Goldberg, 90 S.Ct. at 1019-22).

In this case, SHA has a policy of sending Voucher Program participants one notice of the

annual recertification hearing via certified mail.  That letter informs the participant that if she fails

---

[4] Cooley does not allege or argue deliberate indifference.  Therefore, deliberate indifference will not be analyzed herein.

[5] Cooley alleges only that she did not receive proper notice.  She does not pursue any claims related to the other Goldberg factors.  Therefore, they will not be discussed herein.

to attend the appointment or reschedule it prior to the appointment time, her participation in the program may be terminated.  If benefits are terminated, the recipient receives notification of the termination, which states that the recipient has ten days from the date of that letter to request, in writing, an information hearing.

In this case, Cooley failed to attend her annual recertification hearing.  SHA notified her in writing that her participation in the Voucher Program was being terminated effective May 31, 2012, for her failure to attend the appointment.  Cooley requested the informal hearing.  At the hearing, Cooley explained that she did not receive notice of the recertification haring until after the scheduled date had passed because her mother died and she did not retrieve her mail during the relevant time. After the hearing, SHA issued a notice of final termination, explaining that Cooley's benefits were being terminated because she did not prove that her failure to attend the recertification hearing was due to circumstances beyond her control, that she had plenty of time to retrieve her mail from the date of her mother's death, and that it was her decision not to retrieve her mail.

Cooley relies on <u>Jones v. Flowers</u>, 126 S.Ct. 1708 (2006), to support her argument that SHA's policy of sending one notice of the recertification hearing via certified mail deprived her of due process. Cooley argues that she did not actually receive the notice before the appointment, and that SHA should have been required to send a different type of notice before proposing termination of her benefits for her failure to attend the appointment.

In <u>Jones</u>, the Commissioner of State Lands in Arkansas attempted to notify Gary Jones of a property tax delinquency by mailing a certified letter to him at the address that had the tax delinquency.  <u>Id.</u> at 1712. The letter was returned to the Commissioner as undeliverable.  <u>Id.</u> Two years later, the Commissioner arranged for a private tax sale of the property to Linda Flowers. <u>Id.</u>

10

at 1712-13. Jones filed suit alleging that the Commissioner's attempted notice was insufficient under the Due Process Clause.  Id. at 1713.  The Supreme Court of the United States held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." Id.

Jones is distinguishable from this case.  In Jones, the property was sold at a tax sale before Jones had any notice of the impending sale or the opportunity to be heard.  In this case, Cooley had notice of the impending termination of her participation in the Voucher Program, and an opportunity to be heard at the informal hearing before the termination became effective.  Further, the holding of Jones is limited to tax sales. Id. Therefore, Jones does not support Cooley's argument that she was deprived of her due process rights.

Cooley has not demonstrated that she did not receive due process before her participation in the Voucher Program was finally terminated.

## C.    Review of SHA's Decision

Cooley alleges that SHA acted arbitrarily and capriciously when it terminated her benefits without considering "whether the totality of the circumstances warrante[ed] termination."

In an action brought against a housing authority for review of its decision, "'federal courts must give [an] agency's fact-finding the same preclusive effects to which it would be entitled in the State's courts.'" Clark, 85 F.3d at 151 (quoting Univ. of Tenn. v. Elliott, 106 S.Ct. 3220, 3226 (1986)); see also United States v. Utah Constr. & Mining Co., 86 S.Ct. 1545, 1559-60 (1966) (deference is given to the fact-finding of an agency acting in a judicial capacity where parties had an adequate opportunity to litigate).

Under Louisiana law, when a trial court reviews the administrative actions of a governmental body it serves "as a court of judicial review, and . . . cannot substitute its opinion for that of the governmental body absent a finding of arbitrary, capricious action." Freeman v. Durel, - - - So.3d - - -, 2013 WL 1810577, at *3 (La. Ct. App. 5/1/2013) (citing Tanner v. City of Baton Rouge, 422 So.2d 1263 (La. Ct. App. 1982)). "'The trial court applies the manifest error standard of review in reviewing the facts as found by an administrative tribunal; the trial court applies the arbitrary and capricious test in reviewing the administrative tribunal's conclusions and its exercise of discretion.'" Id. (quoting Women's and Children's Hosp. v. State Dep't of Health and Hosps., 984 So.2d 760, 766 (La. Ct. App. 2008)). The administrative tribunal's decision "must be affirmed", "[u]nless the record contains insufficient evidence to support the administrative decision or shows that the decision was clearly wrong." Id. (citing Almerico v. Harahan Mun. Fire and Police Civil Serv. Bd., 973 So.2d 799 (La. Ct. App. 2007)).

In this case, SHA's decision to terminate Cooley's participation in the Voucher Program was arbitrary and capricious. At her informal hearing, Cooley presented evidence that she did not receive notice of the recertification hearing until after the scheduled date of the appointment, and that she immediately contacted her caseworker upon receipt of the notice. Cooley presented evidence that her mother died three weeks before the scheduled appointment, and that she did not retrieve her mail during the relevant time because she was out of town concluding her mother's affairs. Danzey considered the evidence and found that it was Cooley's personal choice not to retrieve her mail during the relevant time, and that there was no emergency circumstance that prevented her from doing so. However, Danzey failed to consider that Cooley contacted SHA the day she received the letter, and returned to SHA's office the next day to consult with her caseworker

regarding her missing the scheduled recertification hearing appointment. Cooley complied with the requirement of contacting the SHA within three days of the receipt of the letter. Further, Danzey failed to consider that SHA did not verify when Cooley actually received the notification letter until the day of the informal hearing. Given the circumstances surrounding the death of Cooley's mother, and Cooley's immediate response upon receipt of the letter, SHA acted arbitrarily and capriciously in terminating Cooley's participation in the Voucher Program. Thus, Cooley's motion for summary judgment is GRANTED, and SHA's motion for summary judgment is DENIED as to Cooley's claim that SHA acted arbitrarily and capriciously in terminating her participation in the Voucher Program.

**CONCLUSION**

 **IT IS HEREBY ORDERED** that Robin N. Cooley's Motion fo Summary Judgment (Doc. #17) is **GRANTED.**

 **IT IS FURTHER ORDERED** that the Housing Authority of the City of Slidell's Motion for Summary Judgment (Doc. #16) is **DENIED.**


 New Orleans, Louisiana, this  15th  day of July, 2013.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

13
